IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION


KENNETH BEY,                        )
                                    )
            Plaintiff,              )
                                    )
    v.                              )    No. 09 C 7737
                                    )
ERIC K. SHINSEKI,                   )
                                    )
            Defendant.              )


## OPINION AND ORDER

Plaintiff Kenneth Bey, who is African-American, is a former Veterans

Affairs ("VA") employee. He worked as a housekeeping aide at the VA's Edward

Hines, Jr. Hospital in Illinois. Following back injuries and extended periods on

light duty, defendant discharged plaintiff in 2006 on the ground that he could not

perform the work of his position, with or without an accommodation, and no

alternative position was available. Plaintiff contends that, in violation of Title VII

of the Civil Rights Act of 1964 (42 U.S.C. § 2000e *et seq.*) and 42 U.S.C. § 1981,

he was discharged and denied reasonable accommodations in retaliation for prior

complaints of race discrimination. He also contends that he was denied reasonable

accommodations and discharged in violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.*, and the Rehabilitation Act of 1973, 29 U.S.C. § 701 *et seq.* Additionally, plaintiff complains he was retaliated against by not providing him with a complete performance evaluation and by assigning him to be under two section chiefs instead of a supervisor and a section chief. He may additionally be claiming that these actions were also motivated by disability discrimination.

Plaintiff filed this action *pro se* and was subsequently provided appointed counsel. Counsel amended the complaint and represented plaintiff throughout discovery, including the taking of depositions. After the close of discovery, appointed counsel moved to withdraw on the ground that counsel and plaintiff disagreed regarding the merits of the claims and appropriate litigation strategy. Plaintiff did not oppose the motion to withdraw, which was granted. Defendant moved for summary judgement and provided plaintiff with the *pro se* notice required by Seventh Circuit precedent and Local Rule 56.2. Plaintiff was provided an adequate opportunity to respond, including a number of continuances.

Defendant provided a 59-paragraph statement of facts that complies with Local Rule 56.1(a)(3). Although advised of the Local Rule 56.1(b)(3)(A)-(B)

requirement to provide a paragraph-by-paragraph response to this statement, plaintiff failed to so respond. In his response brief,[1] plaintiff asserts some facts, but generally does not provide specific citations to support those assertions.[2] Moreover, plaintiff does not assert disagreement with the factual contentions concerning exhaustion, settlement, and waiver. Plaintiff also does not contend there is evidence of any similarly situated employee who was treated more favorably.

Failure to properly respond to the movant's Rule 56.1 statement is a basis for treating the statements of facts as true for purposes of summary judgment. *See* Loc. R. 56.1(b)(3)(C); Fed. R. Civ. P. 56(e). The court has discretion as to how strictly to enforce Rule 56.1. *Trade Fin. Partners, LLC v. AAR Corp.*, 573 F.3d

---

[1]Plaintiff filed two documents entitled "Motion to Oppose Summary Judgment." One is a list of exhibits with some assertions as to facts contained therein and the other is more in the nature of a brief. The documents, including exhibits, that were filed with the Clerk of the Court were docketed as a single entry, Docket Entry [65]. The "brief" filed with the Clerk differed from the version provided to chambers as a "Judge's copy." *See* Loc. R. 5.2(f). Since it contains additional pages, the version of the "brief" provided to chambers has been made part of the docket in this case. Also, some exhibits that were provided to chambers, but not filed with the Clerk have been added to the record. Apparently, the brief provided to defendant was also missing pages.

[2]As is discussed below, plaintiff cites to and provides specific deposition testimony regarding searching for alternative employment he could perform.

401, 409 (7th Cir. 2009); ***Bordelon v. Chicago Sch. Reform Bd. of Tr.***, 233 F.3d 524, 527 (7th Cir. 2000); ***Zitzka v. Vill. of Westmont***, 743 F. Supp. 2d 887, 897 (N.D. Ill. 2010). Particularly when a party is proceeding *pro se*, this bench does not strictly enforce Rule 56.1 if a party, in some manageable form, asserts facts and provides citations to the record. *See **Sklyarsky v. ABM Janitorial Servs., Midwest***, 2012 WL 174647 *3 (N.D. Ill. Jan. 18, 2012), *aff'd sub nom. by unpublished order*, ***Sklyarsky v. ABM Janitorial Servs.--N. Cent., Inc.***, ___ F. App'x ___, 2012 WL 3800841 (7th Cir. Sept. 4, 2012); ***Morrow v. Potter***, 2011 WL 663029 *2 (N.D. Ill. Feb. 10, 2011) (collecting cases). Plaintiff, however, provides approximately 300 pages of exhibits without specific citations and the exhibits generally do not appear to be documents that contain admissible support for most of plaintiff's assertions of additional facts. With the limitations noted below, for purposes of ruling on summary judgment, the facts asserted in defendant's statement of facts will be taken as true and it will be determined whether those facts entitle defendant to summary judgment as a matter of law.

Before turning to the facts before the court, it is noted that two of the claims contained in plaintiff's Corrected First Amended Complaint, which was drafted by appointed counsel, contain claims that may not be brought against a

federal agency.  Title VII is the exclusive remedy for a claim of employment discrimination based on race made against a federal agency. *Brown v. Gen. Servs. Admin.*, 425 U.S. 820, 835 (1976); *Lewis v. Henderson*, 249 F. Supp. 2d 958, 965 (N.D. Ill. 2003); *Holloway v. Bentsen*, 870 F. Supp. 898, 900-01 (N.D. Ind. 1994). Also, by its express language, § 1981 applies only to claims against nongovernmental actors or based on acts performed under color of state law; it does not apply to claims directly against a federal agency nor against a federal employee acting under color of federal law.  42 U.S.C. § 1981(c); *Davis v. U.S. Dep't of Justice*, 204 F.3d 723, 725-26 (7th Cir. 2000).  Because plaintiff's earlier charges of race discrimination at the VA are not cognizable under § 1981, any related retaliation claim cannot be based on § 1981.  The Count II retaliation claim will be dismissed and consideration of retaliation is limited to the Count I Title VII claim.[3]

The Rehabilitation Act is the exclusive remedy for a federal employee disability discrimination claim.  Plaintiff has no cognizable claim under the ADA. *Mannie v. Potter*, 394 F.3d 977, 982 (7th Cir. 2005).  The Count III ADA claim

---

[3]Unlike Title VII, § 1981 has no exhaustion requirement.  It also has a distinct statute of limitations.  As to the merits of a retaliation claim, essentially the same analysis applies for both Title VII and § 1981.

will be dismissed and consideration of the disability claim will be limited to the Rehabilitation Act.[4]

From 1993 until April 12, 2006, plaintiff was employed as a housekeeping aide at Hines VA Hospital. That position included certain physically active duties. This included cleaning and sanitation duties throughout the Hospital, including scrubbing, stripping and refinishing floors; washing walls, ceilings, vents, and light fixtures; and cleaning patient wards, bathrooms, urinals, showers, and windowsills. Duties also occasionally involved use of heavy, power equipment. There was moderately heavy physical assertion, including lifting and moving objects up to 50 pounds. Also, a housekeeping aide must occasionally be able to move, set up, and work from ladders and scaffolding. Outdoor assignments included shoveling snow and removing trash.

Shortly after starting his employment at Hines, plaintiff was in an automobile accident. After the accident, plaintiff's back would flare up, especially in the winter. When necessary, plaintiff would be provided light duty assignments. In October 2004, plaintiff was in another automobile accident.

---

[4]The same underlying standards apply to both types of cases, so ADA case law may also be applied in a Rehabilitation Act case. *See Ozlowski v. Henderson*, 237 F.3d 837, 839-40 (7th Cir. 2001).

Thereafter, plaintiff's supervisor, Section Chief Judy Maxwell-Perkins, assigned plaintiff to "unclassified duties located throughout the facilities to accommodate your medical request." In June 2005, Maxwell-Perkins was concerned about plaintiff's inability to perform his normal duties and asked him to provide updated medical documentation. She, and later the Chief of Environment Management Service, asked plaintiff for an updated employment application in order to determine if there was other work he could perform at the Hospital that was consistent with plaintiff's medical limitations.

In a July 2005 report, plaintiff's physicians noted that lifting, bending, and twisting aggravated his back. They further stated that "prolonged lifting, bending, and twisting" performed at work had caused "permanent aggravation and further degeneration" of plaintiff's back. They recommended that plaintiff's duties be a "sedentary job only."

A few months later, plaintiff's physicians recommended that he be returned to work, but with the limitation that he push or pull rarely; not lift anything; not stoop, bend, or climb at all; and not engage in prolonged walking or standing. The length of this restriction was "permanent to one year."

At that point, plaintiff had primarily been performing telephone receptionist work. In November 2005, plaintiff was informed that this temporary assignment would last 60 more days. He was further advised that, if a new position could not be found within that time period, he might be subject to a non-disciplinary termination based on an inability to perform the work of a housekeeping aide.

Having failed to return to ordinary housekeeping duties, at the end of December 2005, the Environmental Management Service Chief sent plaintiff a letter proposing that he be removed from his position. The letter recited the limitations stated in the physician reports and that there had been two unsuccessful searches for alternative work.[5] Plaintiff was provided an opportunity to respond. In January 2006, plaintiff responded with updated medical information. This letter stated that it was expected that plaintiff would reach normal work capacity within three months. A VA official requested a detailed explanation of this changed evaluation. A January 24, 2006 physicians' report again stated extensive

_____

[5]The letter states that there were two prior unsuccessful searches. Defendant, though, does not provide any underlying documentation to establish that those searches actually occurred nor the completeness of the searches. But even if no adequate search occurred, there is nothing to dispute that the Chief believed that two adequate searches had been conducted.

limitations and restrictions, but noted they were not permanent. No estimate of a return to no restrictions was made, only a statement that plaintiff would be reevaluated in two months.

The Assistant Director of Hines then recommended to James Hetrick, the Director of Hines, that plaintiff be removed from his position. Hetrick had no prior knowledge of plaintiff. On March 6, 2006, based on the physician evaluations that plaintiff could not perform the physical duties of a housekeeping aide and information that alternative job searches had been conducted, Hetrick approved the recommendation, with March 17, 2006 being the date of termination. However, Hetrick met with plaintiff in person and plaintiff represented he was hopeful of being able to perform his work by early April. Hetrick then requested that Human Resources again try to find an alternative position. The termination was held in abeyance until mid-April. Still, no medical approval was obtained and there is no evidence that another opening existed for which plaintiff was qualified.

Defendant provides documents that were exhibits to the deposition of Human Resources Specialist Tarolyn Baker which support that, following Hetrick's March 2006 request, a search for other available positions was conducted. *See* Def. Exh. C 21-23. The documents are mostly emails to or from

Baker. Baker attaches a document, stated to be from a staffing specialist, conclusorily stating that no position for plaintiff was available. The documents do not establish the extent or nature of the search. Plaintiff provides three pages (12-14) of Baker's Deposition testimony. *See* Pl. Exh. 6. Baker testified that she was not involved in "evaluating or deciding whether a current employee was eligible for promotion or advancement." *Id.* at 12. She also testified that she was not trained regarding providing reasonable accommodations for disabled employees. *Id.* at 13. She apparently was asked whether, at any time, she ever conducted a search of whether there were available positions for an employee with specified restrictions. *See id.* at 14. Plaintiff, however, does not provide the complete question nor any part of the answer, which apparently continued on page 15. The testimony provided does not establish that Baker could not have forwarded to superiors a job search conducted by a staffing specialist. Also, testimony from certain employees that they were unaware of or not trained regarding reasonable accommodation, *see* Pl. Exh. 6-7, does not raise a genuine factual dispute that defendant conducted an inadequate search for other positions. In any event, on summary judgment, the burden is on plaintiff to provide evidence supporting that other positions he could perform were available. ***Jackson v. City of Chicago,***

414 F.3d 806, 813 (7th Cir. 2005). Plaintiff does not present any such supporting documentation. On summary judgment, it must be taken as true that no other alternative position for which plaintiff qualified was available.

Plaintiff's employment was terminated effective April 12, 2006.

On March 22, 2006, plaintiff filed an appeal with the Merit Systems Protection Board ("MSPB") dated March 14, 2006 alleging that his proposed discharge was based on discrimination and reprisal. In April 2006, he renewed this claim after termination of his employment became final. He states he is appealing a "non disciplinary removal based on inability to perform." In a section for reciting any claim of discrimination, plaintiff expressly referred to a failure to provide a reasonable accommodation, including failure to conduct a reasonable job search. In an agreement dated May 17, 2006, plaintiff agreed to dismiss his MSPB appeal without prejudice with the right to refile in the event the Office of Personnel Management ("OPM") denied his application for disability retirement. It is further provided: "If OPM approves [Bey]'s disability retirement the dismissal will be final." Plaintiff was subsequently approved for disability retirement. The dismissal agreement is signed by plaintiff personally. There is no indication that he was represented by counsel at the time.

On June 30, 2006, 79 days after the April 12 termination, plaintiff filed an EEO charge with the VA. At the time, plaintiff was aware there was a 45-day time limit for filing an EEO charge.

Plaintiff provides a January 6, 2006 EEO charge he filed with the VA alleging retaliation and a failure to accommodate. This charge is referenced in his March 14, 2006 MSPB appeal. The MSPB appeal, though, directly challenges the March 2006 decision to discharge him; it does not appeal the January 6, 2006 EEO charge that had not yet been ruled upon. The January 2006 EEO charge raises the issue of retaliating by providing an incomplete evaluation and assigning two section chiefs. It also raises the issue of failing to conduct an adequate job search. Plaintiff subsequently amended this charge to add his claim of discharge. An EEOC Administrative Judge ("AJ") determined that the latter two issues were waived because they were instead pursued in the MSPB proceeding that was dismissed by agreement. The September 10, 2009 final decision of the EEOC[6] affirms the decision of the AJ and the final decision of the VA. Before the EEOC, the AJ's waiver determination was not challenged so that determination was

_____

[6]A copy of this decision is attached to the original *pro se* complaint filed in the present action. *See also* Pl. Corrected Am. Compl. [37] ¶¶ 7-11; Def. Answer [41] ¶¶ 7-11.

upheld by the EEOC. Defendant does not dispute that plaintiff brought the present lawsuit within 90 days of receiving this EEOC decision.

At his deposition, plaintiff testified that his claim of retaliation is based on retaliation for having filed a May 2004 EEO charge, but he could not recall what that charge concerned.

As to the incomplete evaluation that is alleged to be a retaliatory adverse action, plaintiff testified that his supervisor noted that she could not complete the evaluation because plaintiff was on light duty assignments working elsewhere. Plaintiff did not ask his other supervisor to complete the evaluation. Plaintiff also testified that having two section chiefs led to excessive supervision.

Defendant contends that the claims concerning plaintiff's discharge and any distinct claim for failing to conduct an adequate job search are either waived by the MSPB agreed dismissal or because not timely and fully exhausted in administrative proceedings. As to the waiver by agreement contention, defendant cites *Baker v. Potter*, 2005 WL 843169 *14-17 (N.D. Ill. Jan 20, 2005), *aff'd by unpublished order*, 153 F. App'x 393 (7th Cir. 2005). That case is distinguishable. In *Baker*, the plaintiff (who had filed EEO charges, but no MSPB appeal) did not merely agree to dismiss an administrative proceeding, she also entered into a

"Stipulation and Settlement Agreement" in which she "agree[d] to dismiss this action with prejudice, to waive any and all claims against the United States Postal Service, and release the United States Postal Service, its agents and employees, from all liability for any claims arising out of any of the facts alleged in these consolidated and pending causes of action against the Postmaster General or any employees or agents of the United States Postal Service as of the date of the execution of this Settlement Agreement." *Id.* at *6.

In the present case, plaintiff did not enter into a general release. He only agreed that the MSPB case would be dismissed and final. If completion of the MSPB proceeding was necessary to exhaust plaintiff's administrative remedies, then the claims would be waived due to failure to exhaust. To the extent, however, that plaintiff otherwise adequately exhausted the termination and reasonable accommodation claims, they are not waived. Similarly, the untimely June 2006 EEO charge is not a basis for dismissing the present claims if plaintiff otherwise properly exhausted administrative remedies.

There is another complicated wrinkle which defendant does not address. In "mixed" cases involving both claims of discrimination and alleged failure to comply with civil service rules (including all removals), the complaining

employee can choose to proceed before the MSPB instead of following the usual EEO procedures for a discrimination charge. If proceeding before the MSPB, MSPB procedures must be exhausted before proceeding in federal court and related EEO proceedings are not to proceed at the same time as MSPB proceedings. *See generally **Blaney v. United States**, 34 F.3d 509 (7th Cir. 1994); **Kelly v. Potter**, 2009 WL 3380993 *3-4 (N.D. Ill. Oct. 16, 2009); **Robey v. Potter**, 2009 WL 113403 *4 (S.D. Ind. Jan. 15, 2009). Generally, the first forum selected is the one that must be exhausted. **Kelly**, supra; **Robey**, supra.* In Bey's circumstance, he had not been discharged in January 2006, so, at that time, an EEO proceeding was the proper forum for the alleged adverse actions. Following his dismissal, however, he could proceed before the MSPB and chose to so proceed. At that point, the MSPB was the proper forum for exhausting his discharge and job search claims. **Kelly**, *supra.* When he thereafter agreed to dismiss the MSPB proceeding, he waived proceeding on the termination and job search claims in federal court because he did not fully exhaust his MSPB remedies. **Robey**, *supra.*

In responding to summary judgment, *pro se* plaintiff does not address the exhaustion or waiver issues. In his Amended Complaint, however, he relies only

on the January 2006 EEO charge to support that he properly exhausted his administrative remedies. Defendant does not dispute that this charge was sufficient to exhaust remedies for the claims based on an inadequate evaluation and being assigned two section chiefs. Additionally, even if plaintiff's dismissal of the MSPB proceeding did not waive the termination and job search claims, plaintiff waived these issues by not raising them in the EEOC appeal.

For the foregoing reasons, the termination and job search claims would be waived based on failure to adequately pursue administrative remedies. The court, however, hesitates in basing waiver on a theory not fully argued by defendant. Therefore, these claims will also be addressed on their merits.

The claims based on an incomplete evaluation and having two section chiefs fail because neither constitutes an adverse action for either a discrimination claim or a retaliation claim. For a discrimination claim, an adverse employment action is not limited to the loss or reduction of pay or monetary benefits, but it must materially alter the terms and conditions of employment. *Whittaker v. N. Ill. Univ.*, 424 F.3d 640, 647-48 (7th Cir. 2005). It is well established in the Seventh Circuit that a reprimand alone, even one that goes into the employee's personnel file, does not constitute an adverse employment action unless it affects pay or

benefits, or otherwise affects a tangible employment benefit such as by precluding an opportunity for a promotion or raise. *See id.* at 648; ***Benuzzi v. Bd. of Educ. of Chicago***, 647 F.3d 652, 663 (7th Cir. 2011); ***Lloyd v. Swifty Transp., Inc.***, 552 F.3d 594, 602 (7th Cir. 2009). There is no evidence that the incomplete evaluation or having two section chiefs in any way affected plaintiff's conditions of employment. *Cf. **Minor v. Centocor, Inc.***, 457 F.3d 632, 634 (7th Cir. 2006) (close supervision not an adverse employment action); ***Bragg v. Navistar Int'l Transp. Corp.***, 164 F.3d 373, 378 (7th Cir. 1998) ("a supervisor's assessment of an employee's skills is not an adverse employment action").

For purposes of a claim of retaliation, the adverse action requirement is satisfied by actions that "well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." ***Thompson v. N. Am. Stainless, LP***, 131 S. Ct. 863, 868 (2011) (quoting ***Burlington N. & Santa Fe Ry. Co. v. White***, 548 U.S. 53, 68 (2006)). "In determining the significance of any given act of retaliation, the test is objective but 'context matters' and we look at the 'constellation of surrounding circumstances, expectations, and relationships.'" ***Chapin v. Fort-Rohr Motors, Inc.***, 621 F.3d 673, 678 (7th Cir. 2010) (quoting ***Burlington N.***, 548 U.S. at 69). A "materially adverse action" necessary for a

retaliation claim is a broader term than an "adverse employment action" required
for a discrimination claim. *Benuzzi*, 647 F.3d at 665. As with adverse
employment actions, written warnings alone generally will not constitute a
materially adverse action. *Id.* In certain circumstances, though, reprimands can be
sufficient; for example, when the reprimand is particularly harsh or is in a context
that is close to threatening a loss of a tangible job benefit. *See id.*; *Silverman v.
Bd. of Educ. of Chicago*, 637 F.3d 729, 741 (7th Cir. 2011). Here, plaintiff did
not receive a reprimand. He simply had an incomplete evaluation which did not
threaten him in any way. Having two supervisors because he was assigned to
alternative work also does not represent any sort of threat.

The claims based on an incomplete evaluation and having two section
chiefs will be dismissed.

Plaintiff's claim that the VA failed to provide a reasonable
accommodation in that it failed to conduct an adequate job search fails because
such a claim requires proof that there was another available position for which
plaintiff qualified. *Ozlowski*, 237 F.3d at 840; *Ulatowski v. John Sterling Corp.*,
2005 WL 88971 *9-10 (N.D. Ill. Jan. 10, 2005) . Plaintiff presents no such
evidence. This claim will be dismissed.

Applying the usual indirect method, burden-shifting approach for analyzing summary judgment motions as to discrimination claims, plaintiff can make out a *prima facie* claim that he was discriminatorily discharged by showing: "(1) that [ ]he suffers from a disability as defined in the statutes; (2) that [ ]he is qualified to perform the essential functions of the job in question, with or without reasonable accommodation; and (3) that [ ]he has suffered an adverse employment action as a result of [his] disability." *Jackson*, 414 F.3d at 810. Plaintiff does not satisfy the second element. The undisputed evidence before the court is that plaintiff could not perform the essential functions of a housekeeping aide and he presents no evidence of a position he could perform with a reasonable accommodation. The discriminatory discharge claim will be dismissed.

As to the retaliatory discharge claim, "A plaintiff may establish unlawful retaliation using either the direct or indirect method of proof. Under the direct method, [plaintiff] must demonstrate that (1) he engaged in a statutorily protected activity; (2) he suffered a materially adverse action by his employer; and (3) a causal connection exists between the two. Under the indirect method, the first two elements remain the same, but instead of proving a direct causal link, the plaintiff must show that he was performing his job satisfactorily and that he was treated

less favorably than a similarly situated employee who did not complain of discrimination." *Stephens v. Erickson*, 569 F.3d 779, 786-87 (7th Cir. 2009). Plaintiff has no direct evidence of retaliation. His prior complaint of discrimination upon which he relies was made almost two years before he was discharged. He points to no evidence connecting that complaint with his discharge. As to the indirect method, plaintiff provides no evidence of a similarly situated employee who was treated more favorably. The retaliatory discharge claim will be dismissed.

For the foregoing reasons, summary judgment will be granted and plaintiff's case will be dismissed in its entirety. If plaintiff wishes to appeal today's ruling, he must file a Notice of Appeal to the United States Court of Appeals for the Seventh Circuit with the Clerk of the Court, United States District Court for the Northern District of Illinois, 219 South Dearborn Street, 20th Floor, Chicago, Illinois 60604, within thirty (30) days of the entry of the judgment in this case. *See* Fed. R. App. P. 4(a)(1)(A).

IT IS THEREFORE ORDERED that the Clerk of the Court is directed to amend the docket to reflect that the remaining defendant's name is Shinseki, not Shenseki. Defendant's motion for summary judgment [58] is granted. The Clerk

of the Court is directed to enter judgment in favor of defendant and against

plaintiff dismissing plaintiff's cause of action with prejudice.


ENTER:


_____
UNITED STATES DISTRICT JUDGE


DATED: SEPTEMBER 20 , 2012